## SARAH C. LIVERMORE *et al. versus* THOMAS HAVEN, Administrator, &c.

A license to sell real estate in this Commonwealth, belonging to a deceased citizen of another State, for the payment of his debts, will not be granted, to the prejudice of the heirs, where it appears, that there was a fund provided for the payment of the debts in such other State ; at least, until it is shown, that the creditors have used some diligence to obtain payment from such fund, and have met with some legal impediment.

Thus, where a citizen of Louisiana, owning real estate in this Commonwealth, died indebted to certain persons here, and his executor in Louisiana, after paying the creditors in that State and settling the estate there, had in his hands, as trustee of the residuary legatees, a large amount of personal property, and, subsequently, was appointed administrator of the deceased, in this Commonwealth, the Court refused to grant him a license to sell such real estate to pay the creditors here, and thus to disinherit the heirs ; for if the existence of such debts was made known to him before the administration of the estate in Louisiana was closed, he should have paid them out of the residuary fund, and if it was not made known to him, this was, under the circumstances, proof of laches on the part of the creditors, whereby they were precluded from any claim on such real estate.

THIS was an appeal from a decree of the judge of probate, ordering certain real estate, in this Commonwealth, of which Samuel Livermore died seised, to be sold for the payment of his debts. The appellants were heirs, or claimants under heirs, of the deceased. The appellee was appointed administrator of the deceased on the 17th of November, 1835.

The parties stated a case.

The appellee presented a petition to the judge of probate, for a license to sell the real estate of the deceased for the payment of his debts, setting forth that such debts amounted to the sum of $ 5507·50 ; that the real estate of the deceased in this county was appraised at the sum of $ 6300 ; that there was no personal estate ; and that the debts were secured in part by a mortgage of a portion of the real estate. License was, accord ingly, granted by the judge of probate, on the 16th of August 1836, to sell so much of the real estate as would be sufficien for the payment of these debts, they being due to inhabitant of this Commonwealth.

The deceased was a citizen of Louisiana, and died there on the 12th of July, 1833. On the 7th of July, 1832, he made a will, which was not witnessed nor under seal, but which was valid by the laws of that State, wherein, after making certain

specific legacies, &c., he devised the land in controversy, being all not mortgaged, to five of his half sisters, four of whom were among the appellants, and gave the residue of his estate to the children of the appellee, excepting certain books which he gave to Harvard College. The appellee and Isaac Ogden were appointed executors. The will was duly proved and approved in the Probate Court of New Orleans in July 1833. An inventory of the estate, amounting to the sum of $ 260,148·26, was filed in that court ; and the amount of the debts was $ 235,471·17. The appellee and Ogden administered the estate at New Orleans, and after paying many debts there, delivered over the books to Harvard College and paid the specific legacies ; but the debts referred to in the petition of the appellee were never paid by the executors, although payment was requested of the appellee by one of the creditors. On the 6th of February, 1835, the appellee was appointed tutor or guardian to his minor children by the Probate Court in New Orleans. The year of executorship hav'ng expired, Ogden was discharged from the executorship, and the property unsold was delivered over to the appellee, as guardian of the residuary legatees. The property so delivered to the appellee, exceeded the sum of $ 20,000, all of which was in New Orleans. The estate has been represented to be insolvent by the appellee, since the entry of this appeal, and the claims of the creditors in this Commonwealth have been presented and allowed by the commissioners of insolvency. The appellee, under a decree of the Probate Court of New Orleans, dated February 20th, 1835, sold the real estate in that city, to pay debts due from the deceased there, and any other debt that might thereafter be made known.

The appellee was a resident in Boston.

*Robinson* and *Sheafe*, for the appellee, to the point, that, as the deceased was domiciled in another State, the personal property followed such domicil, and the appellee, as administrator in this Commonwealth, was not bound to account for it here, cited *Boston* v. *Boylston*, 2 Mass. R. 384 ; *Dawes* v. *Boylston*, 9 Mass. R. 337 ; *Stevens* v. *Gaylord*, 11 Mass R. 256 ; *Jennison* v. *Hapgood*, 10 Pick. 100.

*Choate* and *W. Smith*, for the appellants, to the point, that

Livermore
*v.*
Haven.

*Oct 16th.*

the power vested in this Court to grant license to executors and administrators to sell real estate for the payment of debts, was *discretionary*, cited *Ex parte Allen*, 15 Mass. R. 58 ; *Nowell* v. *Nowell*, 8 Greenl. 220 ; that this Court, when acting in an ancillary character, embraces in its view all creditors, whether within or without its jurisdiction, *Davis* v. *Estey*, 8 Pick. 475 ; *Dawes* v. *Head*, 3 Pick. 128 ; and that the administrator, having had property within the jurisdiction of this Court, was bound to account for it to its whole extent, personally, *Campbell* v. *Sheldon*, 13 Pick. 8 ; *Dowdale's case*, 6 Co. R. 46 ; *Evans* v. *Tatem*, 9 Serg. & R. 258 ; *Campbell* v. *Tousey*, 7 Cowen, 64.

SHAW C. J. afterward drew up the opinion of the Court Although it is true, that by the laws of this Commonwealth the real estate of the debtor is ultimately held liable for the payment of his debts on his decease, yet it is held with several qualifications and restrictions, and will not be applied to the disinheritance of an heir unless it becomes necessary upon the failure of other assets first liable in due course of administration. And it has been often decided, that application for a license to sell real estate to enable the administrator to pay debts, is an application to the discretion of the court, to be decided upon equitable principles, regard being had to all the circumstances of the case. *Scott* v. *Hancock*, 13 Mass. R. 162 ; *Ex parte Allen*, 15 Mass. R. 58. Where the creditors, through their own *laches*, have failed to obtain payment of their debts, out of funds first applicable to that object, such license ought not to be granted to the injury of the heir.

It appears that S. Livermore made a will, valid by the laws of Louisiana, but not valid to pass real estate by the laws of this Commonwealth, and although in general the legal effect of a will is to be adjudged according to the law of the domicil of the testator, and the place where it is made, yet the passing of real estate, in another jurisdiction, is an exception. That depends upon another general principle, that real estate must be conveyed and transferred, according to the law of the place where it is situated. Several of the sisters, who now claim the estate in this Commonwealth, as heirs at law, would have taken the same estate as devisees, had the

will. been executed in the manner required by the laws of this Commonwealth to pass real estate. And although this cannot be taken into consideration in deciding their legal rights, it adds something to the strength of their equitable claims.

The first and appropriate fund for the payment of debts, is, the general assets in the State of Louisiana, where the principal administration and settlement of the estate took place, consisting of the personal estate, and the proceeds of real estate, ordered to be sold for that purpose, in the ordinary course of administration. That these were more than sufficient for the payment of all the debts, is manifest from the facts agreed, that a considerable amount of legacies have been paid by the executors, which could only have been done after payment of debts. In all the States of the United States it must be presumed, that all debts, as well those due to citizens of other States, as those due to citizens of the same State, are to be paid out of the general assets, before they can be applied to the payment of legacies. Indeed the constitution of the United States guaranties to citizens of each State, the rights and privileges of citizens in all the States, amongst which may be reckoned, that of proving claims and recovering debts, against a deceased person, in due course of administration. Where there is an ample fund provided for the payment of debts, in another State, to which, for aught that appears, the creditors could resort and obtain payment of their debts, no license ought to be granted to sell real estate in this Commonwealth, and thus disinherit the heirs ; at least until it is shown, that the creditors have used some diligence to collect their debts, in the foreign State, and have met with some legal impediment in obtaining them.

But in the present case, the petitioner, who has taken administration in this Commonwealth, was himself the principal executor of the will, in Louisiana, and had the control of the general assets, and in his capacity of tutor or guardian of his children, has received a large amount for them, as residuary legatees under the will. If these debts were seasonably made known to him and satisfactorily proved, before the settlement of the estate was closed, and before he took the *residuum* by way of legacy to his children, then he should have paid the debts out of that fund ; if they were not made known to him,

Livermore
v.
Haven.

it is proof of *laches* in the creditors. We are of opinion, therefore, that the petitioner, whether he be regarded in this matter as acting officially in his own right, or as trustee for the creditors, is not entitled to have a license to sell the real estate in this Commonwealth. The effect would be to disinherit the heirs at law in this Commonwealth and enlarge the residuary legacy under the will in favor of the petitioner's children ; and that in favor of creditors, who have another and appropriate fund for the payment of the debts, or have lost it by their own *laches*. The representation of insolvency can make no difference, because the case finds, that the estate was not in fact insolvent.

*Decree of the Court of Probate, granting the license prayed for, reversed.*